David Yerushalmi
American Freedom Law Center
123 West Chandler Heights Road
No. 11277
Chandler, Arizona 85248
Fax: (801) 760-3901
Email: dyerushalmi@americanfreedomlawcenter.org
Tel: (646) 262-0500

*Attorneys for Plaintiff and Plaintiff Class*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA
Phoenix

|  |  |
|---|---|
| Colleen Huber, <br><br> Plaintiff, <br><br> v. <br><br> Joseph Biden, Jr., in his official capacity as President of the United States of America; Twitter, Inc.; Jack Dorsey, in his official capacity as Chief Executive Officer of Twitter and in his individual capacity; and John Doe(s), in their official capacity as officials in the White House and in their individual capacities; <br><br> Defendants. | **CLASS ACTION COMPLAINT** <br><br> **JURY TRIAL DEMANDED** |

Plaintiff Colleen Huber ("Plaintiff" or "Dr. Huber"), individually and on behalf of all other persons similarly situated, by and through undersigned counsel, brings this Complaint against the above-named Defendants, their employees, agents, and successors in office, and in support thereof alleges the following based upon her own personal knowledge as to herself and her own acts, together with information and belief as to all

other matters, which in turn are based upon, *inter alia*, the investigation conducted by and through her attorneys, which included, among other things, a review of public reporting and other public documents.

## INTRODUCTION

1.     This is a federal civil rights class action in which Plaintiff, for herself and others similarly situated, seeks to be free from unlawful discrimination based upon her and their respective political beliefs and views and her and their respective beliefs and views on public issues and matters of public concern.

2.     Defendants Twitter and Dorsey, operating jointly and conspiring with Defendants Biden and other federal government officials in the Biden Administration (Defendant John Doe(s)), is engaging in viewpoint discrimination—the most egregious form of content discrimination—in violation of the First and Fifth Amendments to the U.S. Constitution.

3.     Plaintiff seeks, *inter alia*, declaratory and injunctive relief, declaring unconstitutional and enjoining Section 230 of the Communications Decency Act, which permits Defendants Dorsey and Twitter to engage in government-sanctioned discrimination and the suppression of free speech.  Plaintiff seeks to prevent Section 230 from being used as a "sword" to suppress speech and as a "shield" from liability in this and similar litigation.

4.     Plaintiff seeks a preliminary and permanent injunction enjoining Defendants from unlawfully suspending Plaintiff's, and all others similarly situated, Twitter page, as set forth in this Complaint.  Plaintiff, on her behalf and all those similarly situated, also seeks nominal and compensatory damages against certain Defendants and reasonable costs

and fees, including reasonable attorneys' fees as against all Defendants.

## JURISDICTION AND VENUE

5.     This action arises under the Constitution and laws of the United States. Jurisdiction is conferred on this Court pursuant to 28 U.S.C. § 1331.

6.     Plaintiff's claims for declaratory and injunctive relief are authorized by 28 U.S.C. §§ 2201 and 2202, by Rules 57 and 65 of the Federal Rules of Civil Procedure, and by the general legal and equitable powers of this Court.

7.     Venue is appropriate in this district pursuant to 28 U.S.C. § 1391(b)(2) and (e)(1) because a substantial part of the events giving rise to Plaintiff's claim occurred in this district.

## PARTIES

8.     Plaintiff Colleen Huber is a United States citizen who resides in Maricopa County, Arizona.  She is a naturopathic medical doctor licensed in Arizona for fourteen years.

9.     Plaintiff utilizes social media platforms, including Twitter, to share her medical knowledge and engage in other forms of free speech.

10.    Defendant Twitter is a privately-owned, Delaware corporation with its principal office in San Francisco, California.

11.    Defendant Twitter hosts the social media platform www.twitter.com.

12.    Defendant Jack Dorsey was at all times relevant to this Complaint Chief Executive Officer of Twitter.  He is sued in both his official and his individual capacities.

13.    Defendant President Biden was at all times relevant to this Complaint, and

remains so today, the President of the United States of America and as such is the highest supervisory official of the Executive Branch of the federal government and directs and ultimately controls the actions of Defendants John Doe(s) conducted in and during the ordinary course of administration business.

14.     Defendant John Doe(s) were at all times relevant to this Complaint officials in the White House who conspired and/or engaged in joint action with Twitter to deprive Plaintiff and all others similarly situated of their fundamental rights.  Defendant John Doe(s) are sued in both their official and individual capacities.

15.     The true names and addresses of the defendants sued herein as John Doe(s) are unknown to Plaintiff, who therefore sues said Defendants by such fictitious names.  If necessary, Plaintiff will seek leave of Court to amend this Complaint to state the John Does' true names when they are discovered.

## FACTUAL ALLEGATIONS

### Twitter—A Forum for Speech

16.     The Internet is an international network of interconnected computers.   It is a unique and relatively new medium of worldwide human communication.

17.     Anyone with access to the Internet may take advantage of a wide variety of communication and information retrieval methods.   These methods are constantly evolving and difficult to categorize precisely.  All of these methods can be used to transmit text; most, like Twitter, can transmit sound, pictures, and moving video images.  Taken together, these tools constitute a unique medium—known to its users as "cyberspace"— located in no particular geographical location but available to anyone situated anywhere

in the world with access to the Internet.

18.     At any given time, millions of users are engaging in conversations on a huge range of subjects.   It is no exaggeration to state that the content on the Internet is as diverse as human thought.

19.     The Internet is thus comparable, from the user's viewpoint, to a vast library including millions of readily available and indexed publications, a sprawling mall offering goods and services, or a vast public forum providing an opportunity to speak and/or learn about issues of great public concern.  Thus, the Internet constitutes a vast platform and forum from which to address and hear from a world-wide audience of hundreds of millions of speakers, readers, viewers, researchers, sellers, and consumers.

20.     This dynamic, multifaceted category of communication includes not only traditional print and news services, but also audio, video, and still images, as well as interactive, real-time dialogue.

21.     Through the use of Twitter, any person with access to the Internet can become a town crier with a voice that resonates farther than it could from any soapbox.

22.     Through the use of Twitter, the same individual can become a pamphleteer.

23.     In sum, the Internet has become the new marketplace of ideas and one with a global and instantaneous reach.

24.     Today, the impact of the Internet as a medium of worldwide human communication cannot be overstated.

25.     Consequently, social media, particularly including Twitter, is exceedingly

important for worldwide human communication and thus provides important forums for that communication.

26.     As, as stated by the U.S. Supreme Court:

While in the past there may have been difficulty in identifying the most important places (in a spatial sense) for the exchange of views, today the answer is clear. It is cyberspace—the "vast democratic forums of the Internet" in general, and social media in particular. . . .  In short, social media users employ these websites to engage in a wide array of protected First Amendment activity on topics "as diverse as human thought."

*Packingham v. N.C.*, 137 S. Ct. 1730, 1735-36 (2017) (citations omitted).

27.     Unlike the conditions that prevailed when Congress first authorized regulation of the broadcast spectrum, the Internet can hardly be considered a "scarce" expressive commodity.   It provides relatively unlimited, low-cost capacity for communication of all kinds.

28.     Denying a person access to this important social media forum based on the content and viewpoint of the person's speech on matters of public concern is an effective way of silencing or censoring speech and depriving the person or organization of political influence and business opportunities.

29.     Due to the importance of social media to political, social, and commercial exchanges, the censorship at issue in this Complaint is an unmatched form of censorship.

30.     Consequently, there is no basis for qualifying the level of First Amendment scrutiny that should be applied in this case.

### Censorship of Plaintiff and Those Similarly Situated

31.     Dr. Huber is an avid Twitter user who uses social media to exercise her First

Amendment rights to her 19,000 followers (individuals who get updates on her Twitter posts).

32.     On her Twitter page, and prior to the censorship set forth herein, Dr. Huber posted her opinions on a broad spectrum of matters, including her viewpoint on current events and politics.  She sought, and continues to desire to share, information, informed by her medical background, to her followers.

33.     On or about February 19, 2021, Dr. Huber posted a quote from a news article to her Twitter account. The Tweet was as follows:

 **Colleen Huber, NMD**
@ColleenHuberNMD

Infectious disease team: [Pfizer's experimental shot causes] "mortality hundreds of times greater in young people compared to mortality from coronavirus without the #vaccine, and dozens of times more in the elderly." https://[...]

34.     The Tweet contained a quote from a news article from a reputable Israeli news source, Arutz Sheva (Israel National News).  The article is available at

https://www.israelnationalnews.com/News/News.aspx/297051 (last visited May 24, 2021).

35.     Shortly after posting the Tweet, Dr. Huber received the following email:



Hello Colleen Huber, NMD,

Your account, ColleenHuberNMD has been suspended for violating the Twitter Rules.

Specifically, for:

## Violating our policy on spreading misleading and potentially harmful information related to COVID-19.

We understand that during times of crisis and instability, it is difficult to know what to do to keep yourself and your loved ones safe. Under this policy, we require the removal of content that may pose a risk to people's health, including content that goes directly against guidance from authoritative sources of global and local public health information.

For more information on COVID-19, as well as guidance from leading global health authorities, please refer to the following links:
Coronavirus disease (COVID-19) advice for the public from the WHO
FAQs about COVID-19 from the WHO

---



**Colleen Huber, NMD**
@ColleenHuberNMD

Infectious disease team: [Pfizer's experimental shot causes] "mortality hundreds of times greater in young people compared to mortality from coronavirus without the #vaccine, and dozens of times more in the elderly."
https://[...]

---

Note that if you attempt to evade a permanent suspension by creating new accounts, we will suspend your new accounts. If you wish to appeal this suspension, please contact our support team.

36.     The email informed Dr. Huber that her Twitter account had been suspended indefinitely because she allegedly violated "Twitter Rules" by "[v]iolating [Twitter's] policy on spreading misleading and potentially harmful information related to COVID-19" ("Twitter COVID-19 Policy").

37.     Dr. Huber immediately began the appeal process.   However, Twitter responded by informing her in an email that she had been permanently suspended and that Twitter would entertain no further appeals.

38.     Dr. Huber has been locked out of her Twitter account since February 19, 2021.  She cannot post to her followers.  She cannot share any content with her followers. She is prohibited from doing anything on Twitter except viewing other people's and organizations' pages.

39.     Upon information and belief, Dr. Huber's suspension from Twitter was a conspiracy and/or joint action between Twitter and unknown officials in the White House, sued herein as John Doe(s), who have engaged in the unlawful conduct alleged herein pursuant to their official government capacities under the direction and, ultimately, control of Defendant President Biden.

40.     Upon information and belief, prior to Dr. Huber's suspension from Twitter, unknown White House officials, in their official capacities, spoke to Twitter to "clamp[] down on COVID misinformation and getting their help to stop it from going viral." *See* https://www.reuters.com/article/us-health-coronavirus-white-house-exclus/exclusive-white-house-working-with-facebook-and-twitter-to-tackle-anti-vaxxers-idUSKBN2AJ1SW.

41.     According to a senior White House official, the Biden-Harris administration is "talking to" social media companies "so they understand the importance of misinformation and disinformation and how they can get rid of it quickly." *Id*.

42.     "The Biden White House is especially trying to make sure such material 'does not start trending on such platforms and become a broader movement,'" the official said. *Id*.

43.     The White House "wants to stop [anti-vaccination] events," like "the anti-vaccine protests at Dodger Stadium in Los Angeles in early February" which was organized on social media. *Id*.

44.     "A Twitter spokesman said the company is 'in regular communication with the White House on a number of critical issues including COVID-19 misinformation.'" *Id*.

45.     Thus, Twitter and the government are working in tandem and with a unified and coordinated purpose to suppress speech based on its viewpoint.

46.     Upon information and belief, employees at Twitter, acting pursuant to instruction by and at the direction of Defendant Dorsey, and officials in the White House came to an agreement to suspend Twitter accounts that post viewpoints on COVID-19 with which they disagree and then suspended these Twitter accounts, depriving the holders of those accounts of their right to freedom of speech.

47.     Upon information and belief, White House officials jointly engaged with Twitter to silence Twitter accounts that post information on COVID-19 contrary to the White House's political agenda.

48.     Upon information and belief, Twitter and its CEO Defendant Dorsey were

willful participants in the conspiracy with the White House officials to silence protected speech.

49.     Upon information and belief, Twitter, and its CEO Defendant Dorsey, and White House officials came to an agreement, meeting of the minds, and/or common understanding to violate the constitutional rights of Plaintiff and the constitutional rights of others who are similarly situated.

50.     Upon information and belief, Twitter and White House officials shared the common objective to silence viewpoints on COVID-19 with which they disagree.

51.     Prior to her suspension, Dr. Huber was an active Twitter user who used her account to exercise her right to free speech. Now, because of the actions of Defendants, she is prohibited from reaching her 19,000 followers, gaining new followers, or interacting in any way with other Twitter users.

52.     Defendants utilized the Twitter COVID-19 Policy to discriminate against Plaintiff based on the viewpoint of her speech—*i.e.*, the viewpoint expressed in a news article that COVID-19 vaccinations may be unsafe. This is a restriction on Plaintiff's right to free speech.

53.     Indeed, while suspending Dr. Huber from her Twitter account based on her viewpoint of the COVID-19 vaccine, Twitter was "working in partnership with the White House to elevate authoritative information in regard to COVID-19." *See* https://www.theverge.com/2021/4/18/22391004/twitter-facebook-snap-white-house-vaccine-campaign.

54.     Under Rules 23(a) and 23(b) of the Federal Rules of Civil Procedure,

Plaintiff brings this action for prospective relief on behalf of herself and other similarly situated people who have been or will be suspended from their Twitter accounts for violating "Twitter Rules" by "[v]iolating [Twitter's] policy on spreading misleading and potentially harmful information related to COVID-19."  The Plaintiff Class is defined as:

> All Twitter account holders who have posted or intend to post on Twitter content deemed by Defendants to be misleading or potentially harmful information related to COVID-19 following the agreement, meeting of the minds, and/or common understanding between and among Defendants to illegally suppress such speech based upon its viewpoint ("Class Period").

55.     The Plaintiff Class is so numerous that joinder of all the members would be impracticable.  Twitter has 187 million users.  As reported by media outlets, and upon information and belief, approximately 11.5 million accounts have been notified or suspended for violating the Twitter COVID-19 Policy.  (*See, e.g.*, "Twitter to boot users who persist with Covid-19 lies" at https://www.livemint.com/technology/apps/twitter-to-boot-users-who-persist-with-covid-19-lies-11614691253346.html   and   "Twitter to permanently   ban   users   who   spread   COVID   misinformation"   at https://www.aljazeera.com/news/2021/3/2/twitter-to-permanently-ban-users-who-spread-covid-misinformation.)

56.     Plaintiff's claims for prospective relief are typical of the members of the Plaintiff Class because Plaintiff and the Plaintiff Class have had their free speech rights restricted and/or chilled by Defendants' policy.

57.     Plaintiff will fairly and adequately protect the interests of the Plaintiff Class. Plaintiff has no conflicts involving other class members or Defendants.   Plaintiff understands her role as a class representative and her duties to the class in this litigation.

Plaintiff is represented by competent and skilled counsel whose interests are fully aligned with the interests of the class.

58.   Questions of law and fact are common to the class.  These legal questions include but are not limited to:

a.   Does it violate the First Amendment for the government to conspire with a private entity to silence or chill viewpoints with which it disagrees?

b.   Does it violate the First Amendment for the government to engage in joint action with a private entity to silence or chill unfavorable viewpoints?

c.   Does it violate the Fifth Amendment for the government to conspire with a private entity to treat as less favorable certain viewpoints?

d.   Does it violate the Fifth Amendment for the government to engage in joint action with a private entity to treat as less favorable certain viewpoints?

59.    Maintaining individual actions would create a risk of "inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class."  Fed. R. Civ. P. 23(b)(1)(A).  Multiple courts issuing multiple injunctions governing the constitutionality of the Twitter COVID-19 Policy would be entirely untenable.  Doing so would only contribute to a state of uncertainty and confusion that allows the constitutional violations described in the Complaint to continue.

60.   This case involves "adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not

parties to the individual adjudications."  Fed. R. Civ. P. 23(b)(1)(A).

61.     Finally, "the party opposing the class has acted or refused to act on grounds

that apply generally to the class, so that final injunctive relief or corresponding declaratory

relief is appropriate respecting the class as a whole[.]"  Fed. R. Civ. P. 23(b)(1)(A).  There

is no allegation that Plaintiff has been targeted because of anything unique to her as an

individual.  Rather, she has been repeatedly targeted because of her membership in a class

of people who seek to post information on COVID-19 that Defendants oppose.  Plaintiff's

targeting exists only by virtue of a broader pattern and practice of unconstitutional conduct

directed at this class.  Logically, injunctive relief for the "class as a whole" is the only

mechanism available to afford relief in light of conduct directed specifically to the class.

## Section 230 of the Communication Decency Act

62.     The Twitter Rules and specifically the Twitter COVID-19 Policy is made

possible by § 230 of the Communications Decency Act ("CDA").

63.     Section 230 of the CDA provides, in relevant part, as follows:

(c) Protection for "Good Samaritan" blocking and screening of offensive material.
     (1) Treatment of publisher or speaker. No provider or user of an interactive
computer service shall be treated as the publisher or speaker of any information
provided by another information content provider.
     (2) Civil liability. No provider or user of an interactive computer service
shall be held liable on account of—
          (A) any action voluntarily taken in good faith to restrict access to or
     availability of material that the provider or user considers to be obscene,
     lewd, lascivious, filthy, excessively violent, harassing, or otherwise
     objectionable, whether or not such material is constitutionally protected; or
          (B) any action taken to enable or make available to information
     content providers or others the technical means to restrict access to material
     described in paragraph (1) [subparagraph (A)].

47 U.S.C. § 230(c).

64.     Section 230 further provides the following: "State law.  Nothing in this section shall be construed to prevent any State from enforcing any State law that is consistent with this section.  No cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section."  *Id*. at § 230(e)(3).

65.     Section 230 further states as follows:

(f) Definitions. As used in this section:
    (1) Internet.  The term "Internet" means the international computer network of both Federal and non-Federal interoperable packet switched data networks.
    (2) Interactive computer service.  The term "interactive computer service" means any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server, including specifically a service or system that provides access to the Internet and such systems operated or services offered by libraries or educational institutions.
    (3) Information content provider. The term "information content provider" means any person or entity that is responsible, in whole or in part, for the creation or development of information provided through the Internet or any other interactive computer service.
    (4) Access software provider. The term "access software provider" means a provider of software (including client or server software), or enabling tools that do any one or more of the following:
        (A) filter, screen, allow, or disallow content;
        (B) pick, choose, analyze, or digest content; or
        (C) transmit, receive, display, forward, cache, search, subset, organize, reorganize, or translate content.

47 U.S.C. § 230(f).

66.     Neither before nor after the enactment of the CDA have the vast democratic forums of the Internet been subject to the type of government supervision and regulation that has attended the broadcast industry.  Moreover, the Internet is not as invasive as radio or television.

67.     As set forth in this Complaint, by way of § 230 of the CDA, the federal government is empowering discrimination and the censorship of speech in these vast democratic forums.

68.     Section 230 permits content- and viewpoint-based censorship of speech.  By its own terms, § 230 permits Twitter "to restrict access to or availability of material that [they] consider[] to be obscene, lewd, lascivious, filthy, excessively violent, harassing, or otherwise objectionable."

69.     Section 230 confers broad powers of censorship, in the form of a "heckler's veto," upon Twitter censors, who can censor constitutionally protected speech and engage in discriminatory business practices with impunity by virtue of this power conferred by the federal government.

70.     The interest in encouraging freedom of expression in a democratic society outweighs any benefit of censorship conferred upon Twitter by the federal government.

71.     Section 230 is not tied to a specific category of speech that is generally proscribable (*i.e.*, obscenity), nor does it provide any type of objective standard whatsoever.  The statute does permit the restriction of obscenity, but it also permits censorship of speech that is "otherwise objectionable, whether or not such material is constitutionally protected." 47 U.S.C. § 230(c)(2)(A).  Further, the subjective "good faith" of the censor does not remedy the vagueness issue, it worsens it.

72.     Twitter falls under the provisions of § 230 and is therefore permitted to engage in its discriminatory practices by the federal government.

73.     Section 230, as applied, operates as a government-enforced heckler's veto.

74.     Section 230 is vague and overbroad and lacks any objective criteria for suppressing speech.

75.     Section 230 permits Twitter to engage in government-sanctioned discrimination and censorship of free speech.

76.     State action lies in the enactment of a statute such as § 230 because it alters legal relations between persons, including the selective withdrawal from one group of legal protections against private acts, regardless of whether the private acts are attributable to the State.

77.     Section 230 is a statute that alters the legal relations between Plaintiff and Twitter, resulting in the withdrawal from Plaintiff of legal protections against private acts. Consequently, state action lies in Plaintiff's challenge.

## FIRST CLAIM FOR RELIEF

### (Twitter COVID-19 Policy—First Amendment Freedom of Speech)

78.     Plaintiff hereby incorporates by reference all stated paragraphs as though fully set forth herein.

79.     By reason of the aforementioned acts, policies, practices, procedures, and/or customs, created, adopted, and enforced under color of federal law, Defendants have deprived Plaintiff of the right to freedom of speech in violation of the First Amendment to the United States Constitution.

80.     Defendants' First Amendment restrictions via the Twitter COVID-19 Policy, facially and as applied to Plaintiff's speech activity and the speech activity of those similarly situated intends to, and does in fact, suppress speech with which Defendants

disagree and as such violates the First Amendment.

81.    Defendants engaged in joint action to suspend Plaintiff from Twitter, depriving her of her free speech rights and discriminating against Plaintiff based on her viewpoint in violation of the First Amendment.

82.    Defendants engaged in a conspiracy to suspend Plaintiff and those similarly situated from Twitter, depriving them of their free speech rights and discriminating against them based on their viewpoint in violation of the First Amendment.

83.    Defendants have caused, and will continue to cause, Plaintiff and those similarly situated to suffer undue hardship and irreparable injury.

84.    As a direct and proximate result of Defendants' joint action and/or conspiracy to violate the First Amendment, Defendants' First Amendment restrictions, facially and as applied to Plaintiff's speech activity and the activity of those similarly situated, offend the First Amendment by granting public officials and their joint actors/coconspirators unbridled discretion to suppress viewpoints that do not serve their political agendas.

85.    Section 230 of the CDA, facially and as applied, is a content- and viewpoint-based restriction on speech in violation of the First Amendment.

86.    Section 230 of the CDA, facially and as applied, is vague and overbroad and lacks any objective criteria for suppressing speech in violation of the First Amendment.

87.    Section 230 of the CDA, facially and as applied, permits Defendants Twitter and Dorsey to engage in government-sanctioned discrimination and censorship of speech in violation of the First Amendment.

88.     Section 230 of the CDA, facially and as applied, confers broad powers of censorship, in the form of a "heckler's veto," upon Defendant Twitter, which can censor constitutionally protected speech and engage in discriminatory business practices with impunity by virtue of this power conferred by the federal government in violation of the First Amendment.

89.     Section 230 of the CDA, facially and as applied, grants Defendant Twitter and its officers, agents, and employees unbridled discretion to censor Plaintiff's speech, and the speech of those similarly situated, such that their decision to limit Plaintiff's speech, and the speech of those similarly situated, is not constrained by objective criteria, but may rest on ambiguous and subjective reasons in violation of the First Amendment.

90.     Section 230 of the CDA, facially and as applied, permits Defendant Twitter to restrict Plaintiff's speech, and the speech of those similarly situated, based on the content and viewpoint expressed by Plaintiff's message, and the respective messages of those similarly situated, in violation of the First Amendment.

91.     Section 230 has caused, and will continue to cause, Plaintiff and those similarly situated to suffer undue hardship and irreparable injury, entitling Plaintiff and those similarly situated to declaratory and injunctive relief.

92.     Plaintiff and those similarly situated lack an adequate or available administrative remedy.

93.     Plaintiff and those similarly situated have no adequate remedy at law to correct the continuing deprivation of their legal rights.

94.     As a direct and proximate result of Defendants' violation of the First

Amendment, Plaintiff and those similarly situated have suffered irreparable harm, including the loss of their constitutional rights, entitling them to declaratory and injunctive relief as against all Defendants and nominal and compensatory damages proximately caused during the Class Period against Defendants in their individual capacities.

## SECOND CLAIM FOR RELIEF

### (Equal Protection—Fifth Amendment)

95.     Plaintiff hereby incorporates by reference all stated paragraphs as though fully set forth herein.

96.     By reason of the aforementioned acts, policies, practices, procedures, and/or customs, created, adopted, and enforced under color of federal law, Defendants have deprived Plaintiff of the equal protection of the law guaranteed under the Fifth Amendment to the United States Constitution.

97.     Because Defendants are operating under the color of federal law, the Fifth Amendment is applicable.

98.     The U.S. Supreme Court's approach to Fifth Amendment equal protection claims has always been precisely the same as to equal protection claims under the Fourteenth Amendment.  Consequently, case law interpreting the Equal Protection Clause of the Fourteenth Amendment is applicable when reviewing an equal protection claim arising under the Fifth Amendment.

99.     By granting use of a forum (the Internet and Twitter) to people whose views Defendants find acceptable, but denying or restricting use to those expressing less favored or more controversial views, such as those expressed by Plaintiff and others similarly

situated, Defendants have violated the equal protection guarantee of the Fifth Amendment.

100.    As set forth in this Complaint, Defendants' use of the Twitter COVID-19 Policy to suppress Plaintiff's speech has deprived Plaintiff and those similarly situated of the equal protection guarantee of the Fifth Amendment.

101.    As set forth in this Complaint, Defendants' joint action and conspiracy to censor speech about COVID-19 on Twitter that Defendants disfavor violates the equal protection guarantee of the Fifth Amendment.

102.    As a direct and proximate result of Defendants' violation of the Fifth Amendment, Plaintiff and those similarly situated have suffered irreparable harm, including the loss of their constitutional rights, entitling them to declaratory and injunctive relief as against all Defendants and nominal and compensatory damages proximately caused during the Class Period against Defendants in their individual capacities.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff asks this Court:

A)    That this Court declare that Defendants' joint action and conspiracy to suppress Plaintiff's speech, and the speech of others similarly situated, as set forth in this Complaint, violates Plaintiff's rights protected by the First and Fifth Amendments;

B)    That this Court enjoin Defendants from suppressing Plaintiff's speech and the speech of others similarly situated on Twitter as set forth in this Complaint;

C)    That this Court declare that Defendants' use of the Twitter COVID-19 Policy as applied to suppress speech addressing public issues and matters of public concern, as set forth in this Complaint, violates the First and Fifth Amendments.

D)      That this Court enjoin Defendants' use of the Twitter COVID-19 Policy as applied to suppress speech addressing public issues and matters of public concern, as set forth in this Complaint;

E)      That this Court declare that § 230 of the Communications Decency Act violates the First and Fifth Amendment as set forth in this Complaint;

F)      That this Court enjoin § 230 of the Communications Decency Act as set forth in this Complaint;

G)      That this Court award Plaintiff and Plaintiff Class nominal and compensatory damages against Defendants named in their individual capacity only for the past loss of Plaintiff's and Plaintiff Class' constitutional rights during the Class Period as set forth in this Complaint;

H)      That this Court award Plaintiff and Plaintiff Class their reasonable attorney fees, costs, and expenses as against all Defendants pursuant to 28 U.S.C. § 2412 and other applicable law;

I)      That this Court grant such other and further relief as it deems equitable and just under the circumstances.

### DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury of all issues triable of right by a jury.

Respectfully submitted,

**AMERICAN FREEDOM LAW CENTER**

*/s/ David Yerushalmi*
David Yerushalmi, Esq.
(NY Bar No. 4632568; DC Bar No. 978179; Cal. Bar
No. 132011; Ariz. Bar No. 0096)
123 West Chandler Heights Road
No. 11277
Chandler, Arizona 85248
Tel: (646) 262-0500; Fax: (801) 760-3901

Robert J. Muise, Esq.* (MI P62849)
P.O. Box 131098
Ann Arbor, Michigan 48113
Tel: (734) 635-3756; Fax: (801) 760-3901
*Subject to admission *pro hac vice*

*Attorneys for Plaintiff and Plaintiff Class*